## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

**JOHN EARL JORDAN, JR.**                                          **PETITIONER**
**Reg #07438-043**

**VS.**                           **NO.: 2:11CV00176 DPM/BD**

**T.C. OUTLAW, Warden,**
**Federal Correctional Complex,**
**Forrest City, Arkansas**                                          **RESPONDENT**

### RECOMMENDED DISPOSITION

**I**.      **Procedure for Filing Objections**

The following Recommended Disposition ("Recommendation") has been sent to

United States District Court Judge D.P. Marshall, Jr.  Mr. Jordan – or any party – may file

written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the

objection.  An objection to a factual finding must identify the finding of fact believed to

be wrong and describe the evidence that supports that belief.

An original and one copy of objections must be received in the office of the United

States District Court Clerk within fourteen (14) days of this Recommendation.  A copy

will be furnished to the opposing party.

If no objections are filed, Judge Marshall can adopt this Recommendation without

independently reviewing all of the evidence in the record.  By not objecting, you may also

waive any right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.    **Background**

Petitioner John Earl Jordan, Jr. was incarcerated in the Federal Correctional

Institution in Forrest City, Arkansas ("FCI-FC"), and lost good-conduct time for violating

prison rules.[1]  This habeas corpus petition arises from that lost good-conduct time.

Mr. Jordan has filed at least five previous petitions for writ of habeas corpus in this

Court challenging the execution of his federal sentence.[2]  He has also filed other petitions

in other courts.  See *Jordan v. Reese, et al.*, 1:09CV00057-VEH-HGD (N.D. Ala.

dismissed March 2, 2009); and *Jordan v. Payne*, 1:05CV234-LG-JMR (S.D. Miss.

dismissed May 24, 2006).  None of these petitions had merit.

Most of the earlier petitions stemmed from the Bureau of Prisons ("BOP") taking

$133.00 from Mr. Jordan's inmate trust fund account under the Inmate Financial

---

[1] Mr. Jordan is currently residing in Volunteers of Greater New Orleans, a halfway house in Hammond, Louisiana.  (#10)

[2] *Jordan v. United States, et al.*, Case No. 2:09CV00092-BRW (E.D. Ark. dismissed Jan. 11, 2010); *Jordan v. Outlaw*, Case No. 2:10CV00036-BRW (E.D. Ark. dismissed June 14, 2010); *Jordan v. Outlaw*, Case No. 2:10CV00154-BRW (E.D. Ark. dismissed October 12, 2010);  *Jordan v. Outlaw*, Case No. 2:11CV00098-JLH (E.D. Ark. dismissed March 6, 2012).  Mr. Jordan's father also filed a habeas petition of behalf of his son.  *Jordan v. McCormack, et al.*, Case No. 2:10CV00021-BRW (E.D. Ark. dismissed March 9, 2010).

Responsibility Program ("IFRP") as restitution for his bank robbery conviction.  The

IFRP complaint is not directly at issue here, but Mr. Jordan mentions it repeatedly in the

current petition.  His "core complaint" here is that the BOP's disciplinary process is

"fatally flawed" and resulted in the "invalid loss of good-time."  (#1, p. 2)

      This petition arises out of a December 20, 2010 incident when Mr. Jordan refused

to obey an officer's order to return to the general prison population.[3]  (#1, p. 26)  He

refused to participate in the subsequent disciplinary hearing, so FCI-FC officials held a

hearing in his absence on March 24, 2011.  (#1, p. 23-25; #8-1, p. 48)  The disciplinary

hearing officer found sufficient evidence that Mr. Jordan had refused the officer's order

and provided Mr. Jordan with detailed reasons for the finding.  As a result of the

disciplinary conviction, Mr. Jordan lost fourteen days of good-conduct time, as well as

ninety days of commissary, telephone, and visitation privileges.  (#1, p. 25)

      Mr. Jordan claims that the disciplinary action violated his due process rights; his

First Amendment right to redress grievances; the Eighth Amendment prohibition against

cruel and unusual punishment; and the Geneva Conventions' rules for treatment of

prisoners.  (#1)  His specific grounds for habeas relief are: (1) denial of due process in the

delay between the rule violation and the disciplinary hearing (#1, p. 6); (2) denial of the

opportunity to present a defense (#1, p. 6-7); (3) refusal to assign him the specific staff

---

[3] The disciplinary charge was for "refusing to accept a program assignment."  (#1, p. 26)

representatives he requested (#1, p. 8-9); (4) violation of BOP policy through the issuance

of an untimely incident report (#1, p. 9-10); (5) violation of BOP progressive discipline

policy (#1, p. 10-11); and (6) violation of due process, the First Amendment, and Geneva

Conventions by blocking his administrative appeal.[4] (#1, p. 11-14)

III.   **Discussion**

In the prison setting, inmates are entitled to limited due process protections.  When

revoking good-conduct time, these due process rights are: (1) advanced written notice of

the disciplinary violation; (2) an opportunity, with some exceptions, to call witnesses and

present a defense, and (3) a written statement by the fact-finders as to the evidence relied

upon and the reasons for the disciplinary action taken.  *Dible v. Scholl*, 506 F.3d 1106,

1110 (8th Cir. 2007)(citing *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768

(1985) and *Wolff v. McDonnell*, 418 U.S. 539, 564-571, 94 S.Ct. 2963 (1974)).  There is

no question here that Mr. Jordan received all of these procedural protections.  It is also

clear that "some evidence" supported the disciplinary conviction.  See *Flowers v.*

*Anderson*, 661 F.3d 977, 980 (8th Cir. 2011)(citing *Superintendent*, 472 U.S. at 455, 105

---

[4] Mr. Jordan offers only conclusory allegations in grounds seven and eight.  (#1, p. 14)  He complains of "irregular abusive process resulting in illegal seizure of good-time in trespass of constitutional mandates," and a "clear case of cruel and unusual punishment that would shock and outrage the public upon discovery that the Government does not follow its own laws or honor its written policy."  (#1, p. 14)  Mr. Jordan provides no factual or legal support for either of these claims.  Furthermore, the nub is encompassed in grounds one through six.

S.Ct. at 2774)("some evidence" must support disciplinary conviction to comport with the requirements of due process).

Mr. Jordan provided no legal support for any of his claims.  Nevertheless, this Court thoroughly reviewed his allegations to determine whether they provided any basis for habeas corpus relief.  See *Jones v. Jerrison*, 20 F.3d 849, 853 (8th Cir. 1994) (district court must analyze alleged facts in a pro se habeas petition to determine whether they state a federal claim).  They do not.  Not one of Mr. Jordan's claims has any merit under settled law.

A.    *Delay in Disciplinary Hearing*

Mr. Jordan committed the rule violation at issue on December 20, 2010.  His disciplinary hearing was held on March 24, 2011.  (#1, p. 23-25; #8-1, p. 48)  He alleges that the time lapse between the violation and the hearing violated his right to due process.

Due process does not require that a prison disciplinary hearing be held within a specific time after an alleged rule violation, so long as the delay does not prejudice an inmate's ability to present a defense.  See *Wolff*, 418 U.S. 539, 94 S.Ct. 2963.  Even if there had been an undue delay, Mr. Jordan's claim would still fail.  He has not showed any prejudice as a result of delay.  See *Griffin-Bey v. Bowersox*, 978 F.2d 455, 456 (8th Cir. 1992) (due process claim requires showing of prejudice).

He argues that the three-month lag between the violation and the hearing, "prevented [him] from being able to remember all relevant facts," thus denying him the

5

ability to defend himself.  (#1, p. 6)  But his claim of prejudice is not credible.  Mr.

Jordan hand-wrote a statement on the day of the rule violation, explaining why he refused

the officer's order.  (#8-1, p. 46-47)  His justification recited – again – the taking of

$133.00 from his inmate account as partial restitution in his bank robbery conviction.

In fact, Mr. Jordan had written an earlier statement, on November 18, 2010, after a

previous rule violation.  In that statement, he had written:  "I will not return to general

population at any Outlaw run facility – ever."  (#8-1, p. 25)  If Mr. Jordan could not

remember the circumstances surrounding his December 20, 2010 rule violation, he could

have reviewed either of these written statements to refresh his recollection.

In any event, a three-month delay, under these circumstances, did not trigger due

process protections, particularly since the only prejudice alleged is that Mr. Jordan's

memory faded in the interim.

B.      *Ability to Present a Defense*

Inmates facing disciplinary proceedings must be allowed to call witnesses and

present documentary evidence in defense of the charges against them.  *Wolff*, 418 U.S. at

566, 94 S.Ct. at 2979.  Mr. Jordan claims he was denied access to evidence for his

defense because FCI-FC officials did not respond to his Freedom of Information Act

("FOIA") request.  This claim runs contrary to the facts.

Mr. Jordan's rule violation occurred on December 20, 2010.  He had made a FOIA

request (relating to the BOP's deduction of the $133.00 from his inmate account) almost

eight months earlier – on April 30, 2010.  (#1, p. 7; 8-1, p. 57-63)  The FOIA request

obviously had nothing to do with the December 20, 2010 rule violation.  Instead, this

claim is a thinly veiled attempt by Mr. Jordan to re-litigate – yet again – his issue with the

IFRP.

      C.    *Staff Representative*

Inmates have no due process right to counsel in disciplinary proceedings.  See

*Wolff*, 418 U.S. at 570, 94 S.Ct. at 2981 (Supreme Court declined to find a right to either

retained or appointed counsel in disciplinary proceedings).  In some circumstances,

however, inmates should have the assistance of a fellow inmate or staff person.  *Id*.

And in fact, the BOP provides inmates with staff representatives during

disciplinary proceedings  In this case, Mr. Jordan requested that Dr. Peikar represent him

at the hearing.  (#1, p. 23-24)  When informed that, due to his responsibilities at the FCI-

FC, Dr. Peikar would not represent him, Mr. Jordan requested Lieutenant Watson.

Lieutenant Watson was involved in the investigation, so was ineligible to represent Mr.

Jordan.  (#1, p. 23-24)  When Mr. Jordan refused to request a different staff

representative, FCI-FC officials appointed Unit Secretary Vance as Mr. Jordan's staff

representative.  (#1, p. 23-24)  When Mr. Jordan refused to participate in the disciplinary

hearing, Unit Secretary Vance appeared at the hearing on his behalf.  (#1, p. 24)

Mr. Jordan claims that the BOP violated his due process rights in refusing to

appoint the specific staff representatives he requested.  (#31, p. 8)  He admits, however,

that the only reason he wanted Lieutenant Watson to represent him was so that he could complain to Lieutenant Watson about alleged crimes committed by FCI-FC officials – namely, the now-familiar taking of $133.00 from his inmate account.  (#1, p. 8)

Given the undisputed circumstances here, the Court cannot find a due process violation based on the denial of Mr. Jordan's request for a specific staff representative.  In any event, Mr. Jordan has not shown – or even alleged – any prejudice resulting from the designation of a staff representative.

      D.    *Timeliness of Incident Report*

Mr. Jordan claims that BOP policy prohibited FCI-FC officials from issuing the December 20, 2010 disciplinary charge because his rule violation occurred more than 180 days after an investigation began on the IFRP issue.  He cannot prevail on this claim.

First, he has not identified the BOP policy that would prohibit issuing a disciplinary charge against him.  And even if he had identified the policy, he has no stand-alone due process right in having prison officials follow prison policy.  *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003).

Second, and more importantly, this claim is silly on its face.  Mr. Jordan essentially argues that, after an investigation has begun on one issue, he can violate any prison rule he wants, as often as he wants, and the BOP has no recourse in issuing a disciplinary charge.  As expected, Mr. Jordan has provided no legal support for this claim.

E.     *Progressive Punishment*

Mr. Jordan also claims that the BOP violated its own policy by punishing him progressively for multiple rule violations.  (#1, p. 10-11)  He fails to identify the BOP policy he relies on, but his argument is that the progressive-discipline policy for a same-rule violations covers only a twelve-month period, and that more than twelve months had elapsed since his last same-rule violation.  He argues that the BOP should have wiped the slate clean twelve months after his prior violation instead of applying so-called progressive discipline.

This argument runs counter to undisputed facts, but it has no legal merit, even if it jibed with facts.  Mr. Jordan committed a similar rule violation in November of 2010, just one month prior to the December 20, 2010 rule violation at issue here.  If the BOP applies progressive punishment for similar violations occurring within a twelve-month period, the December 20, 2010 violation at issue here falls squarely within the policy.  Further eroding this claim is the fact that the disciplinary hearing officer warned Mr. Jordan after the November, 2010 violation that future similar misconduct would result in application of the BOP's  progressive discipline policy.  (#8-1, p. 19)

Finally, it is not clear from the record whether progressive discipline was even used in meting out Mr. Jordan's punishment for the December violation.  Regardless, Mr. Jordan has no independent right to have prison officials follow prison policy.

9

F.    *Administrative Appeal*

Mr. Jordan's final claim concerns his administrative appeal of the disciplinary conviction.  He alleges that, "Respondent intentionally blocked and sabotaged the appeals process in bad faith."  (#1, p. 13)  Even if true, this is irrelevant to Mr. Jordan's loss of good-conduct time.

Mr. Jordan complains repeatedly that FCI-FC officials failed to follow policy, but never denies that he failed to follow the order that led to his loss of good-conduct time. He cannot show prejudice in the alleged inability to appeal a valid conviction for a clear rule violation.  See *Griffin-Bey*, 978 F.2d at 456 (due process claim requires showing of prejudice).

**IV.    <u>Conclusion</u>**

The Court recommends that Judge Marshall dismiss Mr. Jordan's petition for writ of habeas corpus, with prejudice.

DATED this 21st day of March, 2012.

_____
UNITED STATES MAGISTRATE JUDGE